**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

GENEVIEVE ALLEN and RICHARD   )
ALLEN,                                    )
                                       )
      Plaintiffs,              )
                                       )
vs.                                  )    Case No. CIV-05-0347-F
                                     )
CENTER POINT ENERGY ARKLA,   )
                                     )
      Defendant.           )

## ORDER

Defendant, CenterPoint Energy Resources Corp., d/b/a CenterPoint Energy Oklahoma Gas, f/k/a CenterPoint Energy Arkla ("CenterPoint"), has moved for summary judgment. (Doc. no. 19.) Plaintiff has responded, and the motion is ready for determination.

### Standards

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). All reasonable inferences to be drawn from the

undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996).  Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial.  Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

Fact-findings

This is a negligence action which was removed to this court based on diversity jurisdiction.  The court finds that the following facts are undisputed and therefore established for purposes of this motion.[1]

In January, 2004, plaintiffs Genevieve and Richard Allen purchased a house in Altus, Oklahoma.  They purchased the house in "as is" condition from a bank which had foreclosed on the property.  The real estate purchase documents reflect that it was the responsibility of the plaintiffs to have an inspection of the appliances and heating system in the house.   Mr. Allen testified that he never had the house or furnace inspected by a licensed heat and air man prior to the carbon monoxide incident which occurred on February 21, 2004.

On February 16, 2004, Ms. Allen requested that defendant CenterPoint, a gas utility company regulated by the Oklahoma Corporation Commission, initiate gas

---

[1]Plaintiffs' response brief does not identify by number, or otherwise take issue with, any of defendant's numbered undisputed facts.  See LCvR56.1(c) (response to a motion for summary judgment shall number each fact in dispute and refer with particularity to those portions of the record upon which the opposing party relies, stating the number of the movant's facts which are disputed). Although plaintiffs' brief states (on unnumbered p. 5) that "Disputed material facts exist," the only facts which plaintiffs' brief then describes are facts which are agreed to by the defendant, i.e. that the defendant's employee lit the furnace, that after the incident the defendant's employee red-tagged the furnace as a danger, and that carbon monoxide was produced in the plaintiffs' home. The portion of plaintiffs' brief which is entitled "Issues of Material Fact Remain Which Should be Decided by a Trier of Fact" (at the bottom of unnumbered p. 5 and continuing through p. 6) identifies no disputed fact issues which remain for trial.  Despite the inadequacy of plaintiffs' brief to contest defendant's motion, the court has carefully considered all of plaintiffs' arguments and the responses to requests for admission which are attached to plaintiffs' brief.

service for the house.  On February 17, 2004, CenterPoint employee Jason Moreau turned on the gas in the house and performed a leak test of the house which revealed no leaks.  After completing this work, one of the Allens asked Mr. Moreau to light the water heater and furnace.  Mr. Moreau advised that he could not light the water heater per company policy because the water heater was a new installation and it had not previously been in service.  He agreed to light the furnace, however, since it was an existing appliance which had been operating for a number of years without any apparent problems.

When Mr. Moreau lit the pilot light on the furnace there was a clear blue flame which is an indication of proper combustion.  At that time, Mr. Moreau also looked around the burner chamber and the draft hood in the furnace for any sooting or buildup which might indicate incomplete combustion.  He did not find any sooting or buildup, and the flame continued to burn blue and clear during the time he watched it.  The furnace appeared to be drafting properly after he lit the pilot light.  Mr. Moreau concluded there was adequate combustion air for the furnace.  At that time, Mr. Moreau did not observe any unsafe conditions, and he had no knowledge of any hazards, defects, or problems with the central furnace system.  He did not violate any rules, codes, or standards by lighting the furnace and by observing the burner operation in the manner that he did.  Mr. Moreau also did not make any representations to the Allens about the condition of their furnace or venting system. Mr. Moreau is not a licensed heat and air technician, and he is not qualified to perform code inspections of appliances.

The Allens slept in the house on the night of February 20, 2004.  During the early morning hours of February 21, 2004, Mrs. Allen woke up disoriented and was having difficulty breathing.  An ambulance took her to the hospital where she was treated for exposure to carbon monoxide.

CenterPoint was notified of the incident, and on February 22, 2004, it conducted an investigation and inspection of the Allens' house and furnace. A carbon monoxide detector revealed the presence of carbon monoxide. The ensuing investigation revealed that there was not sufficient combustion air provided to the furnace, resulting in the production of carbon monoxide. The carbon monoxide production was caused by either a defective installation of the furnace or by later remodeling in the house which affected the combustion air supply to the furnace.

The house had stood vacant for a period of time before the Allens purchased it. The prior occupant lived in the house for about 11 years, until December, 2002. She never experienced any carbon monoxide problems or other problems with the furnace. She had the furnace maintained and serviced by two different licensed heat and air companies in Altus. The furnace was working well when she moved out of the house.

Prior to February 24, 2004, when the carbon monoxide incident occurred, CenterPoint had no knowledge of any complaints, defects, or problems with the furnace.

<u>Discussion</u>

In <u>Muniz v. Masco Corporation</u>, 744 F. Supp. 266 (W.D. Okla. 1990), Judge David L. Russell granted summary judgment to the defendant gas company, stating that a gas company is not liable for injuries resulting from explosions due to defects of pipeline, gas connections, and fittings on the property of the consumer, absent actual notice of such defects. <u>Muniz</u> cites Oklahoma law for the well established proposition that absent actual notice of a defect, a gas company has a right to assume that its customers will maintain the appliances on their premises and under their control in a reasonably safe condition. *Id*. at 268. <u>Muniz</u> notes that the consumer, by application for gas service, assumes the burden of inspecting and maintaining in a safe condition, the pipe and fittings on his property, and states that the gas company has

the right to assume that this duty will be performed.  *Id*.  Finally, <u>Muniz</u> recognizes that in Oklahoma the allocation of responsibility between the gas company and consumer has been legislated by the Oklahoma Corporation Commission, and that Corporation Commission Rules provide that a gas utility company's duty to maintain equipment ends at the gas meter.  *Id*. at 268; *and see*, Okla. Admin. Code 165: 45-3-2.  <u>Muniz</u> reached these conclusions despite the plaintiffs' arguments that the gas company had assumed a duty of inspection in that case.  <u>Muniz</u> (and other authorities cited in that decision) held that the fact that a gas company may have voluntarily undertaken to inspect a customer's fittings imposes no legal duty upon the gas company.  <u>Muniz</u>, 744 F. Supp. at 269.   Here, as in <u>Muniz</u>, there is no evidence to indicate that Mr. Moreau or CenterPoint assumed any duty with respect to the furnace.  For all of these reasons, in the circumstances of this case, the court finds that there was no duty on the part of CenterPoint to inspect or maintain the Allens' furnace in any particular manner.  Absent a duty, there can be no negligence.

Nor is there any evidence to suggest that this case might fit within the exception recognized in <u>Muniz</u> for instances in which a gas company has actual notice or knowledge of a problem with a customer's equipment.  When CenterPoint's employee Mr. Moreau observed and lit the Allens' furnace on February 17, 2004, all indications were that the furnace was operating properly.  It is also undisputed that prior to the carbon monoxide incident on February 21, 2004, CenterPoint had no notice or knowledge of any problems ever having occurred with respect to this particular furnace, either before or after the Allens came to own it.  Absent actual notice or actual knowledge of a defect, CenterPoint is not liable for any injuries caused by that defect.  *See*, <u>Muniz</u>, 744 F. Supp. at 268.

Judge Russell's analysis in <u>Muniz</u> is especially persuasive when considered in light of the fact that imposition of the duty urged by plaintiffs would create a powerful

disincentive for gas utility companies to provide the service that the defendant, through Mr. Moreau, provided in this case. Services such as that provided by Mr. Moreau can be especially beneficial for persons who are aged, infirm, or simply inept. Absent a clear legal command which is not present here, gas companies should not be discouraged from providing this service.

<u>Conclusion</u>

After careful consideration of the record, the parties' submissions and the relevant authorities, the court finds and concludes that there are no genuine issues of material fact and that CenterPoint is entitled to judgment in its favor in this action as a matter of law. Defendant's Motion for Summary Judgment is **GRANTED**.

Defendant's Motion to Strike Plaintiffs' Witness List (doc. no. 21) is **STRICKEN** as moot. The December 20, 2005 hearing on that motion is likewise **STRICKEN**.

Dated this 9th day of December, 2005.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

05-0347p009(pub).wpd